**State of Minnesota**                                    **District Court**

**County of Hennepin**                                    **Fourth Judicial District**

---

Tony N. Taylor, individually and on behalf of those similarly situated,

                Plaintiff,

vs.

Inflection Risk Solutions, LLC,

                Defendant.

Court File Number: _____

Case Type: Civil

**Summons**

---

THIS SUMMONS IS DIRECTED TO: Inflection Risk Solutions, LLC, c/o Registered Agent Corporation Service Company, 112 North Curry Street, Carson City, NV 89703

    1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

    2. **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons **a written response** called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

    John G. Albanese, Berger Montague PC, 43 SE Main Street, Suite 505, Minneapolis, MN 55414

    3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

    4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

**EXHIBIT 1**

**5. LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

**6. ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

_/s/ John Albanese_
Plaintiff's attorney's signature

October 6, 2020
Dated

John G. Albanese
Print or type plaintiff's attorney's name

**EXHIBIT 1**

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |
| | CASE TYPE: Civil |

Tony N. Taylor,
individually and on behalf
of those similarly situated,

        Plaintiff,

v.

Inflection Risk Solutions, LLC,

        Defendant.

Court File Number: _____

**CLASS ACTION COMPLAINT WITH JURY TRIAL DEMAND**

## PRELIMINARY STATEMENT

1. This consumer class action is brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") against Defendant Inflection Risk Solutions, LLC ("Inflection" or "Defendant"), which routinely violates the FCRA's basic protections by reporting inaccurate public record information in criminal background reports.

2. Minnesota law provides that a criminal defendant who successfully completes probation without the imposition of a prison sentence will have his or her conviction deemed a misdemeanor notwithstanding that the conviction was originally deemed a felony.

3. As shown in Minnesota court records, Plaintiff Tony N. Taylor ("Plaintiff") and members of the Classes successfully completed their probations without the imposition of a prison sentence, and their convictions are therefore deemed misdemeanors.

**EXHIBIT 1**

4. Nevertheless, Inflection systematically and routinely has reported class members' misdemeanor convictions as felonies in criminal background reports without mentioning that the convictions had been deemed misdemeanors.

5. Defendant also reported Plaintiff's conviction as "violent." But Plaintiff's conviction was not one of the statutorily defined "crimes of violence" and in fact, Plaintiff's conviction did not involve any violence. Minn. Stat. § 624.712 subd. 5.

6. On behalf of himself and two Classes of similarly situated consumers, Plaintiff seeks to hold Defendant accountable for its willful and systemic violations of the FCRA's accuracy protections.

## PARTIES

7. Plaintiff Tony N. Taylor is a natural person who at all relevant times resided in the city of Minneapolis, County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

8. Defendant Inflection Risk Solutions, LLC does business in Minnesota and is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

## MINNESOTA'S CRIMINAL CODE

9. The purpose of the Minnesota Criminal Code includes "to protect the individual against the misuse of the criminal law by … prescribing fair and reasonable postconviction procedures." Minn. Stat. 609.01, Subd. 1(2).

10. Such postconviction procedures include the provision that "notwithstanding a conviction is for a felony: … (2) the conviction is deemed to be for a misdemeanor if the imposition of the prison sentence is stayed, the defendant is placed on probation, and the defendant is thereafter discharged without a prison sentence." Minn. Stat. § 609.13, Subd. 1.

EXHIBIT 1

11. Minnesota law also specifically defines certain enumerated crimes as "crime[s] of violence." Minn. Stat. § 624.712 subd. 5.

### THE FCRA AND THE REQUIREMENT OF "MAXIMUM POSSIBLE ACCURACY"

12. Recognizing that the content of consumer reports can have a significant impact on people's lives, Congress has chosen to regulate the procurement, use, and content of those reports through the FCRA.

13. In enacting the FCRA, Congress found:

> There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(4).

14. As the title of the FCRA suggests:

> It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681(b).

15. Courts have repeatedly recognized the reason for the FCRA as articulated by one of its House sponsors:

> [W]ith the trend toward computerization ... and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home.

**EXHIBIT 1**

116 Cong. Rec. 36570 (1970) statement of Representative Sullivan (quoted in *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971 (7th Cir. 2004); *Dalton v. Capital Assoc. Indus.*, 257 F.3d 409 (4th Cir. 2001); *Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982)).

16. To achieve its purposes, the FCRA requires, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added).

17. "[T]he distinction between 'accuracy' and 'maximum possible accuracy' . . . is . . . quite dramatic." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010); *accord Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986).

18. In light of the "maximum possible" accuracy standard in the text of the statute, a report can be inaccurate for FCRA purposes, even if the report is technically true in some narrow sense, but the report is overly general, incomplete, out of date, or misleading. *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (information that is technically correct may be inaccurate if, through omission, it increases materially misleading impression); *Henson v. CSC Credit Services*, 29 F.3d 280 (7th Cir. 1994); *Pinner*, 805 F.2d at 1258; *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37 (D.C. Cir. 1984); *Edeh v. Equifax Info. Serv.*, 974 F. Supp. 2d 1220, 1235 (D. Minn. 2013) (*aff'd per curiam*, 565 Fed. App'x 878 (8th Cir. 2014)); *Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426, 433 (E.D. Pa. 2010) ("As to the accuracy prong of section 1681e(b), the majority of Circuit Courts have adopted the maximum possible accuracy approach which holds that a credit entry can be incomplete or inaccurate within the meaning of the FCRA either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.").

**EXHIBIT 1**

19. Regarding the completeness of information, the Federal Trade Commission has noted that under the FCRA, "A [consumer reporting agency] must report significant, verified information it possesses about a credit account or other item of information included in the consumer's credit file. For instance, a CRA may report delinquent accounts in consumer reports, but must accurately note later payments or other significant activity on the account." *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations*, § 607(b) item 4B.

### FACTUAL ALLEGATIONS ABOUT PLAINTIFF'S INACCURATE REPORT

20. Plaintiff had a firearms license and was licensed to carry a weapon. In 2014, he was convicted of Minn. Stat. § 609.66 subd. 1g(a)(1) for bringing his weapon into a courthouse, specifically Minneapolis City Hall, which houses the small claims court.

21. Plaintiff successfully completed the terms of probation for the conviction for which the imposition of a prison sentence had been stayed.

22. On November 27, 2017, Plaintiff was discharged from probation without a prison sentence.

23. Since that time, publicly available online Minnesota court records have shown that Plaintiff's conviction is deemed a misdemeanor pursuant to Minn. Stat. § 609.13.

24. In early July 2020, Plaintiff applied to rent an apartment through Airbnb.

25. Airbnb ordered a criminal background check on Plaintiff from Defendant Inflection.

26. Inflection's criminal background report on Plaintiff was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

**EXHIBIT 1**

27. On July 6, 2020, Airbnb informed Plaintiff that, based on the criminal background report prepared by Inflection, Airbnb had decided to permanently deactivate Plaintiff's Airbnb account and bar him from ever making any reservations via the Airbnb platform.

28. Plaintiff obtained a copy of his consumer report from Inflection.

29. Inflection's consumer report on Plaintiff indicated that Plaintiff supposedly had a criminal conviction with an "Offense Level" of "FELONY."

30. Specifically, the report listed an Offense Code of "609.66.1.g(a)(1)"; a "Description" of "Dangerous Weapon-Possess-in Courthouse"; an "Offense Level" of "FELONY"; "Offense Class" of "violence"; and a Sentence of "Stay of Imposition Pursuant to M.S. 609.135."

31. Inflection's report on Plaintiff was false.

32. As shown in online public records, Plaintiff's conviction was "a conviction deemed a Misdemeanor pursuant to M.S. 609.13." However, Inflection's report on Plaintiff failed to indicate in any way that Plaintiff's conviction was deemed a misdemeanor.

33. Inflection's consumer report on Plaintiff indicated that Plaintiff supposedly had a criminal conviction with an "offense class" of "violence." That was also inaccurate.

34. Minnesota court records have never indicated that Plaintiff's conviction was for an offense classified as "violence."

35. Moreover, Minn. Stat. § 609.66 subd. 1g(a)(1) is not one of the enumerated "crimes of violence" listed in Minn. Stat. § 624.713 subd.5. The only crime from Minn. Stat. § 609.66 that is denoted a crime of violence in Minn. Stat. § 624.712 is "Minn. Stat. 609.66 subd. 1e (drive-by shooting)." Minn. Stat. § 624.712 subd. 5.

EXHIBIT 1

36. Upon reading Airbnb's July 6 notice and Inflection's report, Plaintiff was severely and extremely emotionally distressed. He disputed the report with Defendant. Defendant recognized its obvious error and corrected the report.

37. The damage, however, remains permanent. Because of Defendant's report, Plaintiff remains permanently barred from the Airbnb platform.

38. Plaintiff remains distressed that any time he might be subject to a criminal background check in the future – for a promotion, for a job with another employer, for a volunteer opportunity, or for any other reason – Inflection might again report false information on him.

### DEFENDANT'S BUSINESS PRACTICES

39. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

40. As summarized in a recent report by the Consumer Financial Protection Bureau,[1] a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. (CFPB Report at 4.)

41. The criminal background check industry takes in revenues of $3 billion a year industry and is growing.[2]

42. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. Background check companies collect millions of criminal records from a number of sources with data from county, state, and federal

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

7

**EXHIBIT 1**

level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

43. Defendant states that it runs over 1,000,000 background checks a month and has over 250,000,000 in-house records, 1,300 in-house data sources, and that the "average time to results" is less than 0.3 seconds. *See generally* https://www.inflection.com/.

44. Defendant's report on Plaintiff failed to accurately report that his conviction had been deemed a misdemeanor even though such information is clearly set forth in the online public records. Defendant also characterized Plaintiff's conviction as one involving "violence" even though by law and in fact, it was not a violent crime.

45. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

46. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

47. Defendant is aware of the FCRA requirements. It has been sued for FCRA violations before, and employs in-house counsel who is a FCRA-compliance attorney.

## CLASS ALLEGATIONS

48. Plaintiff asserts his claim on behalf of the Classes defined below:

**Deemed Misdemeanor Class**
All natural persons on whom Defendant published a consumer report, from two years prior to the commencement of this case and continuing through the resolution of this case, where
  1) the consumer had a Minnesota criminal conviction for which the imposition of a sentence was stayed pursuant to Minn. Stat. §

**EXHIBIT 1**

609.135;
2) the conviction was deemed a misdemeanor pursuant to Minn. Stat. § 609.13, prior to the date on which Defendant prepared the consumer report;
3) the consumer report indicated that the offense level was felony; and
4) the consumer report did not indicate that the conviction was deemed a misdemeanor.

### Inaccurate Offense Characterization Class

All natural persons on whom Defendant published a consumer report, from two years prior to the commencement of this case and continuing through the resolution of this case, where
1) Defendant's report listed a Minnesota criminal offense;
2) Defendant characterized the offense as one involving "violence" or similar denotation; and
3) the conviction was not a crime of violence as defined under Minn. Stat. § 624.712 subd. 5.

49. This action is brought, and may properly be maintained, as a class action under Minn. R. Civ. P. 23.

50. <u>Numerosity</u>: The Classes are so numerous that joinder of all class members is impracticable. Defendant issues millions of reports per year. There are hundreds or thousands of class members.

51. <u>Typicality</u>: Plaintiff's claims are typical of the class members' claims. Defendant treated Plaintiff in the same manner as other class members.

52. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation.

53. <u>Commonality</u>: Defendant uses standardized and automated procedures when generating its reports. Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes. These common questions include:

9

**EXHIBIT 1**

    a. Whether Defendant violated the FCRA, specifically 15 U.S.C. § 1681e(b), by listing as felonies convictions that were deemed misdemeanors;

    b. Whether Defendant violated the FCRA, specifically 15 U.S.C. § 1681e(b), by characterizing non-violent crimes as "violence";

    c. Whether such violations were willful under 15 U.S.C. § 1681n; and

    d. The proper measure of damages.

54.    Class certification is appropriate under Minn. R. Civ. P. 23.02(c) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Classes do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

## TRIAL BY JURY

55.    Plaintiff is entitled to and hereby requests a trial by jury.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### MISREPORTING MISDEMEANORS AS FELONIES

EXHIBIT 1

**On behalf of Plaintiff individually and the Deemed Misdemeanor Class**

56. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

57. Defendant willfully and/or negligently violated 15 U.S.C. § 1681e(b) by misreporting misdemeanors as felonies without following reasonable procedures to assure the maximum possible accuracy of consumer reports on Plaintiff and Deemed Misdemeanor Class members.

58. Defendant acted in negligent, deliberate and reckless disregard of its obligations and the rights of Plaintiff and Deemed Misdemeanor Class members under 15 U.S.C. § 1681e(b). In addition to those facts set forth above, Defendant's negligent and willful conduct is reflected by, *inter alia*, the following:

   a. Defendant's reports are created pursuant to policies and procedures designed to prioritize speed rather than accuracy.

   b. The FCRA was enacted in 1970; Defendant has had many years to become compliant.

   c. Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute.

   d. Defendant knew or had reason to know that Defendant's conduct violated the FCRA.

59. As a result of Inflection's misreporting of misdemeanors as felonies in violation of § 1681e(b), Plaintiff and the Deemed Misdemeanor Class have suffered actual damages, including without limitation, emotional distress, injury to reputation, and obstacles in consumer applications.

**EXHIBIT 1**

60. Plaintiff and the Deemed Misdemeanor Class are therefore entitled to recover actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o.

61. Inflection's actions and omissions were willful, rendering it liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

62. Inflection is liable for Plaintiff's and the Deemed Misdemeanor Class' costs and attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o.

### COUNT II
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### MISREPORTING A NON-VIOLENT OFFENSE AS VIOLENT
### On behalf of Plaintiff individually and
### the Inaccurate Offense Characterization Class

63. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

64. Defendant willfully and/or negligently violated 15 U.S.C. § 1681e(b) by misreporting non-violent offenses as violent without following reasonable procedures to assure the maximum possible accuracy of Plaintiff and Inaccurate Offense Categorization Class members' consumer reports.

65. Defendant acted in negligent, deliberate and reckless disregard of its obligations and the rights of Plaintiff and Inaccurate Offense Categorization Class members under 15 U.S.C. § 1681e(b). In addition to those facts set forth above, Defendant's negligent and willful conduct is reflected by, *inter alia*, the following:

   a. Defendant's reports are created pursuant to intentional policies and procedures designed to prioritize speed rather than accuracy.

   b. The FCRA was enacted in 1970; Defendant has had many years to become compliant.

EXHIBIT 1

c.  Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute.

d.  Defendant knew or had reason to know that Defendant's conduct violated the FCRA.

66.  By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

67.  As a result of Inflection's misreporting of non-violent offenses as violent in violation of § 1681e(b), Plaintiff and Inaccurate Offense Characterization Class members have suffered actual damages, including without limitation, emotional distress, injury to reputation, and obstacles in consumer applications.

68.  Plaintiff and the Inaccurate Offense Characterization Class are therefore entitled to recover actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o.

69.  Inflection's actions and omissions were willful, rendering it liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

70.  Inflection is liable for Plaintiff and the Inaccurate Offense Characterization Class' costs and attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o.

### **WHEREFORE**

Plaintiff, on behalf of himself and the Classes, prays for relief as follows:

a.  Determining that this action may proceed as a class action under Rule 23 of the Minnesota Rules of Civil Procedure;

b.  Designating Plaintiff as a Class Representative and designating Plaintiff's counsel as counsel for the Classes;

c.  Issuing proper notice to the Classes at Defendant's expense;

EXHIBIT 1

d.  Declaring that Defendant violated the FCRA;

e.  Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's and class members' rights and its obligations under the FCRA;

f.  Awarding damages as provided by the FCRA;

g.  Awarding reasonable attorneys' fees and costs as provided by the FCRA;

h.  Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

Dated: October 6, 2020

BERGER MONTAGUE PC

By: *[signature]*
E. Michelle Drake, # 0387366
John G. Albanese, # 0395882
43 SE Main Street, Suite 505
Minneapolis, MN 55414
emdrake@bm.net
jalbanese@bm.net
Telephone: 612-594-5999
Facsimile: 612-584-4470

and

GOOLSBY LAW OFFICE, LLC
John H. Goolsby, #0320201
475 Cleveland Ave. N, Suite 212
Saint Paul, MN 55104
Telephone: (651) 646-0153
jgoolsby@goolsbylawoffice.com

**Attorneys for Plaintiff and the Classes**

EXHIBIT 1

## ACKNOWLEDGEMENT

Plaintiff, by his undersigned counsel, acknowledges that sanctions may be imposed under Minn. Stat. § 549.211.

Dated: October 6, 2020

BERGER MONTAGUE PC

By: /s/ John Albanese
E. Michelle Drake, # 0387366
John G. Albanese, # 0395882
43 SE Main Street, Suite 505
Minneapolis, MN 55414
emdrake@bm.net
jalbanese@bm.net
Telephone: 612-594-5999
Facsimile: 612-584-4470

and

GOOLSBY LAW OFFICE, LLC
John H. Goolsby, #0320201
475 Cleveland Ave. N, Suite 212
Saint Paul, MN 55104
Telephone: (651) 646-0153
jgoolsby@goolsbylawoffice.com

**Attorneys for Plaintiff and the Classes**

**EXHIBIT 1**