## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

Tony N. Taylor, on behalf of himself and
all others similarly situated,

    Plaintiff,

v.

Inflection Risk Solutions, LLC,

    Defendant.

Case No. 0:20-cv-02266-PAM-DTS

**FIRST AMENDED CLASS
ACTION COMPLAINT**

**JURY DEMANDED**

_____

### PRELIMINARY STATEMENT

1. This consumer class action is brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA") against Defendant Inflection Risk Solutions, LLC ("Inflection" or "Defendant"), which routinely violates the FCRA's basic protections by reporting inaccurate public record information in criminal background reports.

2. Minnesota law provides that a criminal defendant who successfully completes probation without the imposition of a prison sentence will have his or her conviction deemed a misdemeanor notwithstanding that the conviction was originally deemed a felony.

3. As shown in Minnesota court records, Plaintiff Tony N. Taylor ("Plaintiff") and members of the Classes successfully completed their probations without the imposition of a prison sentence, and their convictions are therefore deemed misdemeanors.

4.      Nevertheless, Inflection has systematically and routinely reported class members' misdemeanor convictions as felonies in criminal background reports without mentioning that the convictions had been deemed misdemeanors.

5.      Defendant also reported Plaintiff's conviction as "violent."  But Plaintiff's conviction was not one of the statutorily defined "crimes of violence" and in fact, Plaintiff's conviction did not involve any violence.  Minn. Stat. § 624.712 subd. 5.

6.      On behalf of himself and two Classes of similarly situated consumers, Plaintiff seeks to hold Defendant accountable for its willful and systemic violations of the FCRA's accuracy protections.

## PARTIES

7.      Plaintiff Tony N. Taylor is a natural person who at all relevant times resided in the city of Minneapolis, County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

8.      Defendant Inflection Risk Solutions, LLC does business in Minnesota and is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

## JURISDICTION AND VENUE

9.      This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

10.      Venue is proper as this case was removed from Minnesota state court, and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## MINNESOTA'S CRIMINAL CODE

11.    The purpose of the Minnesota Criminal Code includes "to protect the individual against the misuse of the criminal law by … prescribing fair and reasonable postconviction procedures."  Minn. Stat. 609.01, Subd. 1(2).

12.    Such postconviction procedures include the provision that "notwithstanding a conviction is for a felony: … (2) the conviction is deemed to be for a misdemeanor if the imposition of the prison sentence is stayed, the defendant is placed on probation, and the defendant is thereafter discharged without a prison sentence."  Minn. Stat. § 609.13, Subd. 1.

13.    Minnesota law also specifically defines certain enumerated crimes as "crime[s] of violence."  Minn. Stat. § 624.712 subd. 5.

## THE FCRA AND THE REQUIREMENT OF "MAXIMUM POSSIBLE ACCURACY"

14.    Recognizing that the content of consumer reports can have a significant impact on people's lives, Congress has chosen to regulate the procurement, use, and content of those reports through the FCRA.

15.    In enacting the FCRA, Congress found:

There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(4).

16.    As the title of the FCRA suggests:

It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer

credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681(b).

17.    Courts have repeatedly recognized the reason for the FCRA as articulated by one of its House sponsors:

[W]ith the trend toward computerization … and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home.

116 Cong. Rec. 36570 (1970) statement of Representative Sullivan (quoted in *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971 (7th Cir. 2004); *Dalton v. Capital Assoc. Indus.*, 257 F.3d 409 (4th Cir. 2001); *Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982)).

18.    To achieve its purposes, the FCRA requires, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b) (emphasis added).

19.    "[T]he distinction between 'accuracy' and 'maximum possible accuracy' . . . is . . . quite dramatic."  *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010); *accord Pinner v. Schmidt*, 805 F.2d 1258 (5th Cir. 1986).

20.    In light of the "maximum possible" accuracy standard in the text of the statute, a report can be inaccurate for FCRA purposes, even if the report is technically true

4

in some narrow sense, but the report is overly general, incomplete, out of date, or misleading. *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (information that is technically correct may be inaccurate if, through omission, it increases materially misleading impression); *Henson v. CSC Credit Services*, 29 F.3d 280 (7th Cir. 1994); *Pinner*, 805 F.2d at 1258; *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37 (D.C. Cir. 1984); *Edeh v. Equifax Info. Serv.*, 974 F. Supp. 2d 1220, 1235 (D. Minn. 2013) (*aff'd per curiam*, 565 Fed. App'x 878 (8th Cir. 2014)); *Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426, 433 (E.D. Pa. 2010) ("As to the accuracy prong of section 1681e(b), the majority of Circuit Courts have adopted the maximum possible accuracy approach which holds that a credit entry can be incomplete or inaccurate within the meaning of the FCRA either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.").

21.     Regarding the completeness of information, the Federal Trade Commission has noted that under the FCRA, "A [consumer reporting agency] must report significant, verified information it possesses about a credit account or other item of information included in the consumer's credit file. For instance, a CRA may report delinquent accounts in consumer reports, but must accurately note later payments or other significant activity on the account." *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations*, § 607(b) item 4B.

## FACTUAL ALLEGATIONS ABOUT PLAINTIFF'S INACCURATE REPORT

22.     Plaintiff had a firearms license and was licensed to carry a weapon.  In 2014, he was convicted of Minn. Stat. § 609.66 subd. 1g(a)(1) for bringing his weapon into a courthouse, specifically Minneapolis City Hall, which houses the small claims court.

23.     Plaintiff's wife, Sarah Taylor, was identically convicted under the same criminal statute.

24.     Plaintiff successfully completed the terms of probation for the conviction for which the imposition of a prison sentence had been stayed.

25.     Sarah Taylor also successfully completed the terms of probation for the conviction for which the imposition of a prison sentence had been stayed.

26.     On November 27, 2017, Plaintiff was discharged from probation without a prison sentence.

27.     Sarah Taylor was also discharged from probation without a prison sentence.

28.     Since that time, publicly available online Minnesota court records have shown that Plaintiff's conviction is deemed a misdemeanor pursuant to Minn. Stat. § 609.13.

29.     Publicly available online Minnesota court records have also shown that Sarah Taylor's conviction is deemed a misdemeanor pursuant to Minn. Stat. § 609.13.

30.     In early July 2020, Plaintiff applied, in his name only, to rent an apartment through Airbnb.

31.     Airbnb ordered a criminal background check on Plaintiff from Defendant.

32.     Inflection's criminal background report on Plaintiff was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

33.     On July 6, 2020, Airbnb informed Plaintiff that, based on the criminal background report prepared by Inflection, Airbnb had decided to permanently deactivate Plaintiff's Airbnb account and bar him from ever making any reservations via the Airbnb platform.

34.     Plaintiff obtained a copy of his consumer report from Inflection.

35.     Inflection's consumer report on Plaintiff indicated that Plaintiff supposedly had a criminal conviction with an "Offense Level" of "FELONY."

36.     Specifically, the report listed an Offense Code of "609.66.1.g(a)(1)"; a "Description" of "Dangerous Weapon-Possess-in Courthouse"; an "Offense Level" of "FELONY"; "Offense Class" of "violence"; and a Sentence of "Stay of Imposition Pursuant to M.S. 609.135."

37.     Inflection's report on Plaintiff was false.

38.     As shown in online public records, Plaintiff's conviction was "a conviction deemed a Misdemeanor pursuant to M.S. 609.13."   However, Inflection's report on Plaintiff failed to indicate in any way that Plaintiff's conviction was deemed a misdemeanor.

39.     Inflection's consumer report on Plaintiff indicated that Plaintiff supposedly had a criminal conviction with an "offense class" of "violence."   That was also inaccurate.

40.     Minnesota court records have never indicated that Plaintiff's conviction was for an offense classified as "violence."

7

41.     Moreover, Minn. Stat. § 609.66 subd. 1g(a)(1) is not one of the enumerated "crimes of violence" listed in Minn. Stat. § 624.713 subd.5.  The only crime from Minn. Stat. § 609.66 that is denoted a crime of violence in Minn. Stat. § 624.712 is "Minn. Stat. 609.66 subd. 1e (drive-by shooting)."  Minn. Stat. § 624.712 subd. 5.

42.     Upon reading Airbnb's July 6 notice and Inflection's report, Plaintiff was severely and extremely emotionally distressed.  He disputed the report with Defendant. Defendant recognized its obvious error and corrected the report.

43.     The damage, however, remains permanent.  Because of Defendant's report, Plaintiff remains permanently barred from the Airbnb platform.

44.     Plaintiff remains distressed that any time he might be subject to a criminal background check in the future – for a promotion, for a job with another employer, for a volunteer opportunity, or for any other reason – Inflection might again report false information on him.

45.     Sarah Taylor was concerned that Defendant might report the same false information on her that it had reported on her husband.

46.     To find out, Sarah obtained a report on herself from Defendant, dated July 7, 2020.

47.     Defendant's July 7, 2020 report on Sarah included the same false information as Defendant had reported on Plaintiff: "Offense Level" of "FELONY" and "offense class" of "violence."

48.     That Defendant's report on Sarah contained the same false information as Defendant's report on Plaintiff shows that Defendant's report on Plaintiff was not an isolated error but indicative of a systemic problem.

49.     On or about July 7, 2020, Sarah disputed her report with Defendant. Defendant recognized its obvious error and sent Sarah a corrected report, dated July 11, 2020.

50.     Defendant's corrected report on Sarah still included the conviction, but accurately noted that it was a misdemeanor, nowhere referred to it as a "felony," and said "Offense Class other," instead of "Offense Class violence."

51.     Thereafter, Sarah applied, in her name only, to rent an apartment through Airbnb.

52.     Notwithstanding Sarah's non-violent misdemeanor conviction for possession of a dangerous weapon in a courthouse, Airbnb approved Sarah's apartment rental application.

53.     That Airbnb approved Sarah, notwithstanding her non-violent misdemeanor conviction for possession of a dangerous weapon in a courthouse, shows that Airbnb's prior denial of Plaintiff's application was not based on his identical non-violent misdemeanor conviction, but rather on the false part of Defendant's report on Plaintiff.

## DEFENDANT'S BUSINESS PRACTICES

54.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records data.  As a result of the increasing availability of this data, there has been a boom in the background check industry.

9

55.     As summarized in a recent report by the Consumer Financial Protection Bureau,[1] a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  (CFPB Report at 4.)

56.     The criminal background check industry takes in revenues of $3 billion a year industry and is growing.[2]

57.     Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data.  Background check companies collect millions of criminal records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

58.     Defendant states that it runs over 1,000,000 background checks a month and has over 250,000,000 in-house records, 1,300 in-house data sources, and that the "average time to results" is less than 0.3 seconds.  *See generally* https://www.inflection.com/.

59.     Defendant's reports are produced largely, if not entirely, through automated processes and procedures, and reports go through minimal, if any, manual review.  The process used by Defendant to create its reports does not vary meaningfully from consumer to consumer.

---

[1]   CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2]   IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

60.     Defendant's report on Plaintiff failed to accurately report that his conviction had been deemed a misdemeanor even though such information is clearly set forth in the online public records.  Defendant also characterized Plaintiff's conviction as one involving "violence" even though by law and in fact, it was not a violent crime.

61.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

62.     Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

63.     Defendant is aware of the FCRA requirements.  It has been sued for FCRA violations before, and employs in-house counsel who is a FCRA-compliance attorney.

## CLASS ALLEGATIONS

64.     Plaintiff asserts his claim on behalf of the Classes defined below:

**Deemed Misdemeanor Class**
All natural persons on whom Defendant published a consumer report, from two years prior to the commencement of this case and continuing through the resolution of this case, where
1) the consumer had a Minnesota criminal conviction for which the imposition of a sentence was stayed pursuant to Minn. Stat. § 609.135;
2) the conviction was deemed a misdemeanor pursuant to Minn. Stat. § 609.13, prior to the date on which Defendant prepared

the consumer report;

3) the consumer report indicated that the offense level was felony; and

4) the consumer report did not indicate that the conviction was deemed a misdemeanor.

**Inaccurate Offense Characterization Class**

All natural persons on whom Defendant published a consumer report, from two years prior to the commencement of this case and continuing through the resolution of this case, where

1) Defendant's report listed a Minnesota criminal offense;

2) Defendant characterized the offense as one involving "violence" or similar denotation; and

3) the conviction was not a crime of violence as defined under Minn. Stat. § 624.712 subd. 5.

65.     This action is brought, and may properly be maintained, as a class action under Fed. R. Civ. P. 23.

66.     <u>Numerosity</u>:  The Classes are so numerous that joinder of all class members is impracticable.  Defendant issues millions of reports per year.  There are hundreds or thousands of class members.

67.     <u>Typicality</u>:   Plaintiff's claims are typical of the class members' claims. Defendant treated Plaintiff in the same manner as other class members.

68.     <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation.

69.     <u>Commonality</u>: Defendant uses standardized and automated procedures when generating its reports.  Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes.  These common questions include:

a.  Whether Defendant violated the FCRA, specifically 15 U.S.C. §
1681e(b), by reporting as felonies convictions that were deemed
misdemeanors;

b.  Whether Defendant violated the FCRA, specifically 15 U.S.C. §
1681e(b), by characterizing non-violent crimes as "violence";

c.  Whether such violations were willful under 15 U.S.C. § 1681n; and

d.  The proper measure of damages.

70.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because
questions of law and fact common to the Classes predominate over any questions affecting
only individual members of the Classes, and because a class action is superior to other
available methods for the fair and efficient adjudication of this litigation.  Defendant's
conduct described in this Complaint stems from common and uniform policies and
practices, resulting in common violations of the FCRA.  Members of the Classes do not
have an interest in pursuing separate actions against Defendant, as the amount of each class
member's individual claim is small compared to the expense and burden of individual
prosecution.  Class certification also will obviate the need for unduly duplicative litigation
that might result in inconsistent judgments concerning Defendant's practices.  Moreover,
management of this action as a class action will not present any likely difficulties.  In the
interests of justice and judicial efficiency, it would be desirable to concentrate the litigation
of all class members' claims in a single forum.

## **TRIAL BY JURY**

71.    Plaintiff is entitled to and hereby requests a trial by jury.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### MISREPORTING MISDEMEANORS AS FELONIES
### On behalf of Plaintiff individually and the Deemed Misdemeanor Class

72.     Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

73.     Defendant willfully and/or negligently violated 15 U.S.C. § 1681e(b) by misreporting misdemeanors as felonies without following reasonable procedures to assure the maximum possible accuracy of consumer reports on Plaintiff and Deemed Misdemeanor Class members.

74.     Defendant acted in negligent, deliberate and reckless disregard of its obligations and the rights of Plaintiff and Deemed Misdemeanor Class members under 15 U.S.C. § 1681e(b).  In addition to those facts set forth above, Defendant's negligent and willful conduct is reflected by, *inter alia*, the following:

a.     Defendant's reports are created pursuant to intentional policies and procedures designed to prioritize speed rather than accuracy, including the policies and procedures detailed in Paragraphs 57-62 above.

b.     The FCRA was enacted in 1970; Defendant has had many years to become compliant.

c.     Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute.

d.      Defendant knew or had reason to know that Defendant's conduct violated the

FCRA.

75.     Discovery will show that Defendant willfully and/or negligently failed to

follow reasonable procedure to assure maximum possible accuracy, with respect to

misreporting misdemeanors as felonies.

76.     By adopting such a policy, Defendant voluntarily ran a risk of violating the

law substantially greater than the risk associated with a reading that was merely careless.

77.     As a result of Defendant's misreporting of misdemeanors as felonies in

violation of § 1681e(b), Plaintiff and the Deemed Misdemeanor Class have suffered actual

damages, including without limitation, emotional distress, injury to reputation, and

obstacles in consumer applications.

78.     Plaintiff and the Deemed Misdemeanor Class are therefore entitled to recover

actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o.

79.     Defendant's actions and omissions were willful, rendering it liable for

punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

80.     Defendant is liable for Plaintiff's and the Deemed Misdemeanor Class' costs

and attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT II**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b)**
**MISREPORTING A NON-VIOLENT OFFENSE AS VIOLENT**
**On behalf of Plaintiff individually and**
**the Inaccurate Offense Characterization Class**

81.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

82.   Defendant willfully and/or negligently violated 15 U.S.C. § 1681e(b) by misreporting non-violent offenses as violent without following reasonable procedures to assure the maximum possible accuracy of Plaintiff and Inaccurate Offense Categorization Class members' consumer reports.

83.   Defendant acted in negligent, deliberate and reckless disregard of its obligations and the rights of Plaintiff and Inaccurate Offense Categorization Class members under 15 U.S.C. § 1681e(b).   In addition to those facts set forth above, Defendant's negligent and willful conduct is reflected by, *inter alia*, the following:

a.   Defendant's reports are created pursuant to intentional policies and procedures designed to prioritize speed rather than accuracy, including the policies and procedures detailed in Paragraphs 57-62 above.

b.   The FCRA was enacted in 1970; Defendant has had many years to become compliant.

c.   Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute.

d.   Defendant knew or had reason to know that Defendant's conduct violated the FCRA.

84.   Discovery will show that Defendant willfully and/or negligently failed to follow reasonable procedure to assure maximum possible accuracy, with respect to misreporting non-violent offenses as violent.

16

85.    By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

86.    As a result of Defendant's misreporting of non-violent offenses as violent in violation of § 1681e(b), Plaintiff and Inaccurate Offense Characterization Class members have suffered actual damages, including without limitation, emotional distress, injury to reputation, and obstacles in consumer applications.

87.    Plaintiff and the Inaccurate Offense Characterization Class are therefore entitled to recover actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o.

88.    Defendant's actions and omissions were willful, rendering it liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

89.    Defendant is liable for Plaintiff and the Inaccurate Offense Characterization Class' costs and attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## **WHEREFORE**

Plaintiff, on behalf of himself and the Classes, prays for relief as follows:

a.    Determining that this action may proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure;

b.    Designating Plaintiff as a Class Representative and designating Plaintiff's counsel as counsel for the Classes;

c.    Issuing proper notice to the Classes at Defendant's expense;

d.    Declaring that Defendant violated the FCRA;

e.    Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's and class members' rights and its obligations under the FCRA;

17

f.      Awarding damages as provided by the FCRA;

g.      Awarding reasonable attorneys' fees and costs as provided by the FCRA;

h.      Granting other and further relief, in law or equity, as this Court may deem

         appropriate and just.


Dated: November 30, 2020                    BERGER MONTAGUE PC

                                            By:/s/John G. Albanese
                                            E. Michelle Drake, # 0387366
                                            John G. Albanese, # 0395882
                                            43 SE Main Street, Suite 505
                                            Minneapolis, MN 55414
                                            emdrake@bm.net
                                            jalbanese@bm.net
                                            Telephone: 612-594-5999
                                            Facsimile: 612-584-4470

                                            and

                                            GOOLSBY LAW OFFICE, LLC
                                            John H. Goolsby, #0320201
                                            475 Cleveland Ave. N, Suite 212
                                            Saint Paul, MN 55104
                                            Telephone: (651) 646-0153
                                            jgoolsby@goolsbylawoffice.com

                                            **Attorneys for Plaintiff and the Classes**