UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Tony N. Taylor,                                    Civ. No. 20-2266 (PAM/DTS)

      Plaintiff,

v.                                                 **MEMORANDUM AND ORDER**

Inflection Risk Solutions, LLC,

      Defendant.

---

This matter is before the Court on Defendant's partial Motion to Dismiss or to Strike.  For the following reasons, the Motion is denied.

**BACKGROUND**

In 2014, Plaintiff Tony Taylor brought his licensed firearm into Minneapolis City Hall, a building that also contains courtrooms.  (Am. Compl. (Docket No. 15) ¶ 22.)  He and his wife, Sarah Taylor, were subsequently convicted of bringing a weapon into a courthouse in violation of Minn. Stat. § 609.66, subd. 1g(a)(1), which is a felony.  (Id. ¶¶ 22-23.)  Both received a sentence of probation with a stayed prison term, and both successfully completed their probationary sentences.  (Id. ¶¶ 24-27.)  Under Minnesota law, such convictions are deemed misdemeanors, Minn. Stat. § 609.13, and according to Taylor, online public court records list the convictions as misdemeanors.  (Id. ¶¶ 28-29.)

Defendant Inflection Risk Solutions, LLC conducts criminal background checks for its clients, including Airbnb.  In July 2020, Taylor applied to rent an apartment through Airbnb.  (Id. ¶ 30.)  Inflection conducted a background check, and after receiving that report, Airbnb rejected Taylor's application and permanently barred him from ever renting

through Airbnb.  (Id. ¶¶ 31, 33.)  Taylor received a copy of the background check report, which listed his criminal conviction as a felony.  (Id. ¶ 35.)  The report also stated that the "offense class" of the conviction was "violence."  (Id. ¶ 36.)  Taylor disputed the report and Inflection corrected it, but according to Taylor, he remains permanently barred from using Airbnb.  (Id. ¶¶ 42-43.)

Taylor's wife also asked Inflection for a criminal background report, which listed the same erroneous information: that her offense was a felony and that the offense class was "violence."  (Id. ¶ 47.)  Mrs. Taylor disputed her report and Inflection corrected it.  (Id. ¶ 49.)  Thereafter, Mrs. Taylor sought to rent an apartment through Airbnb and was approved for that rental.  (Id. ¶¶ 51-52.)

The Amended Complaint raises two causes of action.  Count I alleges that Inflection violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1682e(b), by either willfully or negligently reporting as felonies crimes that Minnesota law deems to be misdemeanors. Count II asserts the same statutory violation, alleging that Inflection willfully or negligently mis-reported non-violent offenses as violent offenses.

Taylor seeks to represent two classes: a so-called "deemed misdemeanor" class and an "inaccurate offense characterization" class.  (Am. Compl. ¶ 64.)  The "deemed misdemeanor" class consists of individuals with Minnesota felony convictions that were ultimately deemed misdemeanors under Minn. Stat. § 609.13, and on whom Infection published an inaccurate background-check report indicating that the offense was a felony. The "inaccurate offense characterization" class comprises individuals on whom Inflection performed a background check that listed a Minnesota criminal offense described as

involving violence, but whose conviction was not a crime of violence under Minn. Stat. § 624.712, subd. 5.  (Am. Compl. ¶ 64.)  Both classes are limited to two years before this case's commencement.  (Id.)

Inflection's Motion seeks the dismissal of Count II of the Amended Complaint, or in the alternative to dismiss the request for statutory or punitive damages in Count II, and to strike the class allegations in their entirety.

**DISCUSSION**

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6).  A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept plausible factual allegations as true. Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012).

The FCRA mandates that credit-reporting agencies such as Inflection "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  A reasonable-procedures claim requires a plaintiff to plead and ultimately prove that the defendant failed to follow such reasonable procedures, included inaccurate information in the plaintiff's credit report, and the plaintiff suffered an injury because of that inaccurate information. Gohman v. Equifax Info. Servs., LLC, 395 F. Supp. 2d 822, 826 (D. Minn. 2005) (Doty,

3

J.).  The parties agree, however, that a claim asserting a willful violation of the statute does not require proof of any injury, because the FCRA provides for statutory damages for willful violations of its provisions.

**A.     Count II**

**1.     Crime of Violence**

Inflection first argues that Count II fails to state a claim on which relief can be granted, because Inflection's categorization of Taylor's conviction as a violent one is not inaccurate.  Taylor in turn contends that Minnesota law defines crime of violence and that his conviction is not included in that definition.  The crime-of-violence definition to which he points, Minn. Stat. § 624.712, defines a crime of violence for Minnesota's gun-possession statutes, Minn. Stat. §§ 624.711-624.717.  It is true that the definition's laundry list of sections of the Minnesota criminal code does not include the section under which Taylor was convicted, Minn. Stat. § 609.66.  But as Inflection notes, Taylor was convicted of possessing a "dangerous weapon" in a courthouse, Minn. Stat. § 609.66, subd. 1g, and Minnesota law defines a "dangerous weapon" as one "capable of producing death or great bodily harm."  Minn. Stat. § 609.02.  Black's Law Dictionary defines "violent crime" in part as the "threatened use, or substantial risk of use of physical force."  (Def.'s Supp. Mem. (Docket No. 20) at 12.)  Thus, Inflection asserts that Taylor's crime fits the general definition of crime of violence and it was not inaccurate for Inflection to include that notation in its background-check report.

Taylor's response is that the "offense class" category is one of Inflection's own making.  To put it differently, although Inflection represents that its reports are merely a

4

copy of public records, there is no "offense class" in Minnesota's criminal records, so Inflection must have created that category itself.  As such, Taylor argues, Inflection had a duty to ensure that it accurately represented the so-called "offense class."  And here, there is no indication in any public record that Taylor's crime was a violent one, except for the statute's use of the term "dangerous weapon" in the definition of the crime itself.  Taylor claims that, having endeavored to classify the crimes it is reporting, the FCRA required Inflection to make certain that its classifications were accurate.

On a Motion to Dismiss, the Court must take the allegations in the Amended Complaint as true and construe those allegations in favor of Taylor.  It is plausible that, as Taylor alleges, Inflection did not use reasonable procedures when determining what offenses fit the "offense class" of "violence."  Taylor is entitled to discovery as to how Inflection makes this offense-categorization judgment and whether Inflection acted reasonably to ensure, as the FCRA requires, "maximum possible accuracy" in that categorization judgment and the subsequent reporting of the categorization decision to its clients.

### 2.    Willfulness

In the alternative, Inflection asks for dismissal of the statutory and punitive damages associated with Count II.  Inflection contends that any alleged inaccuracy in categorizing Taylor's conviction as one involving violence could not have been willful, for the reasons discussed above with regard to the statutory and general definition of crimes of violence.

The FCRA imposes different penalties for violations of the statute depending on the violator's conduct.  Willful failure to comply subjects the violator to penalties including

5

actual damages of not less than $100, and punitive damages, in addition to costs and attorney's fees, and, as noted, a willful violation does not require a showing of actual injury. 15 U.S.C. § 1681n(a). Willfulness "cover[s] not only knowing violations of a standard, but reckless ones as well." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007). And recklessness, in turn, "entail[s] 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Id. at 68 (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)). An erroneous reading of a statute may be willful only if "objectively unreasonable." Id. at 69.

"To determine whether a reading is objectively unreasonable, the Safeco Court identified three sources of potential guidance for an alleged willful violator: (1) the federal courts of appeals; (2) the FTC; and (3) the statutory text." Just v. Target Corp., 187 F. Supp. 3d 1064, 1068 (D. Minn. 2016) (Frank, J.). Inflection contends that the use of the term "dangerous weapon" in Taylor's statute of conviction should end the matter; because the statute uses this term, it was thus reasonable as a matter of law for Inflection to categorize Taylor's conviction as a violent one. Taylor asserts that Inflection should have also consulted other statutes, namely Minnesota's definition of "crime of violence," which does not include Taylor's crime.

At this stage, the Court cannot determine as a matter of law that Inflection's decision to categorize Taylor's conviction as a violent one was objectively reasonable as a matter of law. Taylor has not had the benefit of any discovery regarding how Inflection decides which crimes are categorized in which way. This is not a situation in which Inflection is merely reporting the public record, but rather Inflection is interpreting the public record.

6

Taylor is allowed to discover whether that interpretation of his crime was objectively reasonable.

**B.      Class Allegations**

Finally, Inflection contends that Taylor's attempt to represent a class is improper. Essentially, Inflection seeks to litigate class certification at the motion-to-dismiss stage. All but one of the cases Inflection cites for the propriety of such an early ruling on class certification issues are from outside this Circuit, although as Inflection notes, the Eighth Circuit has affirmed a district court's dismissal of class claims under Rule 12(b)(6). McCrary v. Stifel, Nicolaus & Co., 687 F.3d 1052, 1058-59 (8th Cir. 2012).  But no court in this Circuit has cited this case for the proposition that considering class-certification issues is always appropriate, or even often appropriate, at this early stage of the litigation.

While the Court has doubts about whether either of the claims Taylor raises is amenable to class treatment, it is premature to make that judgment at this early stage of the litigation.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** the Motion to Dismiss or to Strike (Docket No. 18) is **DENIED**.


Dated: February 16, 2021

                                        s/ Paul A. Magnuson
                                        Paul A. Magnuson
                                        United States District Court Judge

7